**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| WILDEARTH GUARDIANS | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SIERRA CLUB, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No.: 1:12-cv-708-AJB |
| | ) | |
| UNITED STATES BUREAU OF LAND | ) | |
| MANAGEMENT, | ) | |
| | ) | |
| Federal Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF WYOMING, | ) | |
| | ) | |
| Intervenor-Defendant | ) | |

_____)

_____

**FEDERAL DEFENDANT'S MOTION TO TRANSFER VENUE TO THE
DISTRICT OF WYOMING AND MEMORANDUM OF LAW IN SUPPORT**

_____

# TABLE OF CONTENTS

MOTION .......................................................................................................................... 1

MEMORANDUM OF LAW ............................................................................................. 1

BACKGROUND .............................................................................................................. 2

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT .................................................................................................................... 6

    I.     This Case Could Have Been Brought in the District of Wyoming. ....................... 6

    II.    The Interest of Justice Favors Transfer. ............................................................... 6

          A.     Transferring this case to the District of Wyoming would Permit Related
                 Litigation to be Coordinated, or Possibly Consolidated, and would
                 otherwise Conserve Judicial Resources. ..................................................... 7

          B.     The Local Interest in Deciding Local Controversies at Home Favors
                 Transfer. ...................................................................................................... 8

    III.   Convenience considerations Also favor Transfer. ................................................ 11

          A.     The Plaintiffs' Choice of Forum Warrants Little Deference. ................... 11

          B.     Federal Defendant's Choice of Forum is Reasonable ............................... 12

CONCLUSION ................................................................................................................. 12

**MOTION**

Federal Defendant the United States Bureau of Land Management ("BLM") hereby moves the Court to enter an order transferring this action to the District of Wyoming, for the reasons set out in the following memorandum of law.

**MEMORANDUM OF LAW**

Plaintiffs in this action challenge four separate coal leasing decisions issued by BLM from March 2011 to February 2012, covering federal coal lands near the town of Wright, in the Powder River Basin of northeastern Wyoming.  The decisions make available for leasing about 16,000 acres in four distinct tracts: South Hilight, *see* Record of Decision ("ROD") (attached as Ex. A), South Porcupine, *see* ROD (Ex. B), North Porcupine, *see* ROD (Ex. C), and North Hilight, *see* ROD (Ex. D), though only two of the four tracts, South Hilight and South Porcupine, have been leased to date.  Before making these decisions, BLM met its obligations under the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321 *et seq.,* by preparing the Wright Area Final Environmental Impact Statement ("Wright FEIS" or "FEIS"), which analyzed the impacts of mining the four noted tracts and two others not at issue in this case.

Plaintiffs claim the four leasing decisions are arbitrary because, among other things, the Wright FEIS is inadequate.  The same plaintiffs also challenge the FEIS's adequacy in a separate action now pending in the District of Wyoming.  *Wildearth Guardians v. U.S. Forest Serv.*, No. 12-cv-85-NDF (D. WY., filed Dec. 6. 2011).  In the Wyoming action, Plaintiffs seek invalidation of two decisions of the Forest Service consenting to BLM's proposed leasing of the North and South Porcupine tracts, both at issue here, based on inadequacies of the same FEIS.

In sum, Plaintiffs challenge six distinct decisions in two courts based on a single EIS, thus unnecessarily introducing the possibilities of inconsistent judicial outcomes and squandered

judicial resources.  To avoid these possibilities, and because of strong local interest in the

litigation and the fact that all six decisions were made in Wyoming and involve federal coal

lands in Wyoming, Federal Defendant asks the Court to enter an order transferring the case to

Wyoming.  Counsel for the State of Wyoming, Intervenor-Defendant in this action, represents

that Wyoming supports the motion to transfer.  Plaintiffs' counsel indicates they are opposed.

## BACKGROUND

The Mineral Leasing Act of 1920, 30 U.S.C. §§ 181-287 ("MLA"), authorizes the

Secretary of the Interior to dispose of federal coal deposits to citizens of the United States,

associations of its citizens, or corporations organized under the laws of the United States.  30

U.S.C. § 181.  This disposition "implicate[s] a large number of overlapping statutory mandates,"

*Natural Resource Defense Council, Inc. v. Jamison* ("*NRDC*"), 815 F. Supp. 454, 456 (D.D.C.

1992), including the MLA, as amended by Federal Coal Leasing Amendments Act of 1976, 30

U.S.C. §§ 184, 191, 201-209, 352; and the Federal Land Policy and Management Act of 1976,

43 U.S.C. §§ 1701-1787 ("FLPMA").  The MLA provides that, from time to time, the Secretary

shall, on request of a qualified applicant or on the Secretary's own initiative, "offer such lands

for leasing . . . ."  30 U.S.C. § 201(a)(1).

Pursuant to the MLA and its implementing regulations, *see* 43 C.F.R. Subpart 3425, three

companies operating existing mines near Wright submitted requests in 2005 and 2006 to lease

six tracts, the four noted above and the West Hilight and West Jacobs Ranch tracts.  Wright FEIS

Excerpts at ES-1-ES-6 (Ex. E).  BLM considered the requests and decided to prepare a single

EIS evaluating the impacts of mining all six tracts.  *Id*. at ES-10.  BLM and its cooperating

agencies analyzed the impacts of the proposed mining in a two-volume FEIS published on July

30, 2010.  75 Fed. Reg. 44,978 (July 30, 2010) (Notice of Availablity); *see also*

http://www.blm.gov/pgdata/content/wy/en/info/NEPA/documents/hpd/Wright-Coal.html (complete Wright

FEIS with appendices) (last accessed June 15, 2012).  BLM then published separate RODs for

the each of the four tracts.  *See* 76 Fed. Reg. 12,132 (Mar. 4, 2011) (South Highlight); 76 Fed.

Reg. 51,393 (Aug. 18, 2011) (South Porcupine); 76 Fed. Reg. 65,209 (Oct. 20, 2011) (North

Porcupine); 77 Fed. Reg. 5,568 (Feb. 3, 2012) (North Hilight).  Plaintiffs appealed all four

decisions to the Interior Board of Land Appeals ("IBLA"), and petitioned for stays of the South

Hilight and North Porcupine decisions, but subsequently dismissed all appeals to challenge the

decisions here.  *See* Compl. ¶¶ 86–94.

        Because some of the coal in the six tracts underlies National Forest System lands, the

Forest Service, a cooperating agency for purposes of the Wright FEIS, also participated actively

in the decision making process.  Among other things, the Service issued RODs consenting to the

South Porcupine and the North Porcupine lease sales.  Ex. B at 2; Ex. C at 2; *see also* 43 C.F.R.

§ 3420.4-2 (agency consent requirement).  Now, in the District of Wyoming, these same

Plaintiffs seek invalidation of the Forest Service RODs which, for purposes of NEPA

compliance, relied on the impacts analysis contained in the Wright FEIS.  *See* Compl., Dkt. 1,

*Wildearth Guardians,* No. 12-cv-85-NDF ("Forest Service Compl.") (Ex. F); Proposed Amended

Forest Service Compl., Dkt. 49-1, *Wildearth Guardians,* No. 12-cv-85-NDF (D. Wyo. June 8,

2012) ("Proposed Amended Forest Service Compl.") (Ex. G).[1]

───────────────────

[1]/ The same Plaintiffs moved on June 8, 2012, in the Forest Service case to supplement their
complaint by adding allegations respecting the North Porcupine tract that are virtually identical
to those for the South Porcupine tract.  *See* Motion to Supp. Compl., *Wildearth Guardians,* No.
12-cv-85-NDF (D. Wy. June 8, 2012) (Dkt. 49) (Ex. H).

As in the Wyoming action, Plaintiffs here bring suit pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*  They allege the RODs issued by BLM violate NEPA because the agency failed to adequately analyze air quality and climate change impacts, a reasonable range of alternatives, and reasonable mitigation measures.  Compl. ¶¶ 102-09.  Plaintiffs further allege that the RODs violate FLPMA and its implementing regulations by failing to comply with governing resource management plans and failing to ensure compliance with federal air quality standards.  Compl. ¶¶ 110-19.

## **LEGAL STANDARD**

The standard for transferring a case to another district is established by statute.  *See* 28 U.S.C. § 1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").  As the D.C. Circuit has explained, this provision affords the Court broad discretion to determine whether transfer is appropriate.  *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1154 (D.C. Cir. 1978).  Transfer decisions are made based on "individualized, case-by-case consideration of convenience and fairness . . . ." *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964).  In determining whether to transfer, the court must balance two considerations: the convenience of the parties and witnesses and the interest of justice.  *See Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Envtl. Def. v. U.S. Dep't of Transp.*, Civil Action No. 06-2176 (GK), 2007 WL 1490478, *4 (May 18, 2007, D.D.C.).

The "convenience" factor requires consideration of a number of *private* interests, including "(1) the plaintiffs' choice of forum . . . ; (2) the defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the

witnesses; and (6) the ease of access to sources of proof." *Nat'l Wildlife Fed'n v. Harvey*, 437 F.

Supp. 2d 42, 46 (D.D.C. 2006). The "interest of justice" factor requires consideration of several

*public* interests including (1) the desire to avoid multiple litigation from a single transaction; (2)

the desire to try related litigation together; (3) the public interest in conserving judicial resources;

(4) the local interest in deciding local controversies at home; (5) the degree to which both venues

are familiar with the governing laws; and (6) the relative congestions of the calendars of the

transferee and transferor courts. *See id.* (discussing fourth, fifth, and sixth considerations);

*Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 939 F. Supp. 1, 4 (D.D.C. 1996)

(discussing first four considerations); *Holland v. A.T. Massey Coal*, 360 F. Supp. 2d 72, 76

(D.D.C. 2004) (same).

Of the two statutory factors, the more important one is the interest of justice. A number

of federal courts have considered this factor "decisive – outweighing the other statutory factors –

in ruling on a change of venue motion even though the convenience of the parties and witnesses

pointed in a different direction." Wright *et al.*, *Fed. Practice and Procedure*, § 3854 (2008); *see*

*also Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220-221 (7th Cir. 1986) (interest of justice

may be determinative); *Chrysler Capital Corp. v. Woehling*, 663 F. Supp. 478, 483 (D. Del.

1987) (recognizing that the interest of justice is paramount). As Federal Defendants explain

herein, both factors favor transfer to the judicial district where the leasing decisions were made

and where the tracts at issue are located, that is, the District of Wyoming.

## ARGUMENT

This action should be transferred to the District of Wyoming because venue is proper there and transfer would serve the interest of justice, including judicial economy, as well as the convenience of the parties.

### I.    THIS CASE COULD HAVE BEEN BROUGHT IN THE DISTRICT OF WYOMING.

Under 28 U.S.C. § 1404(a), a court may transfer a case to a "district or division where [the case] might have been brought."  28 U.S.C. § 1404(a).  In suits against agencies of the United States, venue is proper in "any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred . . . or (C) the plaintiff resides . . . ."  28 U.S.C. § 1391(e)(1).  It is indisputable that Plaintiffs could have brought this action in the District of Wyoming because the tracts at issue are located there. *See S. Utah Wilderness Alliance v. Lewis*, 2012 Westlaw 635321 at *2 (Feb. 29, 2012) (venue in Utah is proper because the land at issue is located there).  Additionally, the challenged RODs were signed in Wyoming by the BLM Wyoming High Plains District Manager and issued by the High Plains District Office of BLM's Wyoming State Office.  Wyoming is plainly the "the judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(e)(1).  The claims could also have been brought in Wyoming because the BLM officials who made the challenged decisions "reside[]" there. *Id.*  Thus, venue is proper in Wyoming.

### II.    THE INTEREST OF JUSTICE FAVORS TRANSFER.

For a number of reasons, transfer of this case to the District of Wyoming would serve and promote the interest of justice.

**A.  Transferring this case to the District of Wyoming would Permit Related Litigation to be Coordinated, or Possibly Consolidated, and would otherwise Conserve Judicial Resources.**

As noted, Plaintiffs in this action have filed a similar complaint against the Forest Service, challenging its consent to BLM's leasing decisions regarding the North and South Porcupine tracts.  *See* Ex. F ¶¶ 1, 16; *see also* Ex. G ¶¶ 1, 16.  As in this case, *see* Compl. ¶ 70, Plaintiffs challenge the sufficiency of the Wright FEIS.  *See* Ex. F ¶ 15,  Ex. G ¶ 15.  In each case, Plaintiffs allege that the FEIS failed to adequately analyze air quality and climate change impacts; a reasonable range of alternatives; and reasonable mitigation measures.  *See* Compl. ¶¶ 102–09; Ex. F ¶¶ 182–208; Ex. G ¶¶ 212-220.

Plaintiffs also allege in both cases that the Forest Service and BLM violated governing resource management plans by failing to comply with the applicable air quality standards – standards administered by the State of Wyoming.  *See* Compl. ¶¶ 110-19; Ex. F ¶¶ 209–17; Ex. G ¶¶ 212-220; *see also* Ex. B at 2 (noting that the required air quality permit is issued by the Air Quality Division of the Wyoming Department of Environmental Quality).  Notably, Plaintiffs first challenged the Forest Service's consent to the South Porcupine leasing decision in the District of Colorado, but on defendants' motion the court transferred the case to Wyoming.  It did so upon finding that management of the South Porcupine Tract particularly affects Wyoming citizens, due to the economic impacts of coal leasing and Wyoming's regulatory involvement in mining activities.  *See* Order Granting Motion to Transfer at 7, *WildEarth Guardians*, No. 12-cv-85-NDF (D. Wyo. Apr. 24, 2012) (Ex. I) (citing *Trout Unlimited v U.S. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996)).  As the Colorado court explained,

> Not only is local land involved in the leasing of the South Porcupine tract, its management particularly affects Wyoming citizens.  The challenged project would have substantial impacts on the local economy, and it is particularly relevant to the State of

7

> Wyoming given the State's regulatory involvement in the project . . . . Considered as a whole, the magnitude of these local interests weigh heavily in favor of transfer.

Ex. I at 7.

Further, both cases challenge decisions indispensable to allowing the North and South Porcupine leasing decisions to move forward, and thus retaining the case in this district creates the potential for conflicting judgments and the squandering of judicial resources.  For example, the two courts might reach differing conclusions on the adequacy of the FEIS, or order different remedies in the event both courts find the FEIS inadequate.  This court has recognized that the "interests of justice are better served when a case is transferred to the district where related actions are pending."  *Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 55 (D.D.C. 2000) (quotations and citations omitted).  In *Environmental Defense v. U.S. Department of Transportation*, 2007 WL 1490478 (D.D.C. 2007), this court transferred a case to the District of Maryland where another group of plaintiffs had filed an earlier challenge to the same Department of Transportation decision.  *Id.* at *5.  The court stated that denying transfer would "lead to the wastefulness of time, energy, and money" and create the "significant risk that this court and the Maryland court would issue inconsistent orders subjecting Defendants to inconsistent obligations."  *Id.* (citations and quotations omitted).  The same concerns exist here, as the same plaintiffs have raised nearly identical NEPA claims regarding the Wright FEIS and very similar claims regarding air quality compliance.

### B.  The Local Interest in Deciding Local Controversies at Home Favors Transfer.

The Supreme Court has explained that, in cases "which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509

(1947). In other words, there is a "local interest in having localized controversies decided *at home. Id.* (emphasis added); *see also S. Utah Wilderness Alliance v. Norton,* 315 F. Supp. 2d 82, 88-89 (D.D.C. 2004) ("*SUWA*") (explaining in a challenge to a BLM oil and gas lease sale that "[l]and is a localized interest because its management directly touches local citizens" and on that basis transferring the action to Utah). This court has described the local interest in having land management decisions heard locally as "the most important of the public interest factors" in determining whether to transfer a case. *S. Utah Wilderness Alliance*, 2012 Westlaw 635321 at *6. *Sierra Club v. U.S. Dept. of State*, No. C 09-04086 SI, 2009 WL 3112102, at * 3 (N.D. Cal. Sept. 23, 2009) ("Courts have observed that environmental cases often provide a particularly strong basis for finding a localized interest in the region touched by the challenged action.").

Here, BLM officials directly involved in planning for and approving the challenged RODs perform their official duties in Wyoming. BLM's Wyoming District Manager, who approved the RODs, conducts official business in Wyoming, where operative administrative events also occurred, including the public process associated with BLM's decisions. *See* Ex. E at ES-10 (noting public meetings held in Casper, Wyoming in April 2006 and January 2007); *Id*. at 1-24 (noting public scoping meeting held in July 2007 in Gillette, Wyoming). Like plaintiffs in *Intrepid Potash-New Mexico, LLC v. U.S. Department of Interior,* 669 F. Supp. 2d 88 (D.D.C. 2009), Plaintiffs here cannot point to any direct involvement in the decision by federal officials in the District of Columbia. *See id.* at 98; *see also Airport Working Grp. v. U.S. Dep't of Def.*, 226 F. Supp. 2d 227, 230 (D.D.C. 2002) (any role played by D.C. officials was overshadowed by the fact that the permitting process, including public comment, occurred in California).

In addition to these considerations, the case also raises issues that directly affect Wyoming citizens. Local citizens have a "compelling interest" in having localized controversies

9

"decided at home." *Trout Unlimited,* 944 F. Supp. at 19.  Here, this interest is implicated by

Plaintiffs allegation that "[m]ining of the Leases will lead to increased levels of harmful air

pollutants" in the Powder River Basin, and their contentions that ozone standards have been

exceeded on several occasions since 2001.  Compl. ¶¶ 63, 74.

Further, coal mining in the Powder River Basin is very important to Wyoming as both a

source of revenue for the public fisc and as an engine of the economy.  In 2005, coal produced in

Campbell County resulted in $661 million in revenue for the state of Wyoming, and mining

comprised 8.3% of the Wyoming Gross State Product.  *See* Ex. E at 3-302.  Where, as here, the

challenged agency decision "implicates considerable local economic, political, and

environmental interests," this Court should transfer the case.  *See Shawnee Tribe v. United*

*States*, 298 F. Supp. 2d 21, 26 (D.D.C. 2002).

Finally, the presumption that localized controversies should be decided in the forum

where the project is located has particular resonance where the State of Wyoming not only was a

cooperating agency for purposes of the Wright FEIS but will also play an active role in

permitting, air quality enforcement, and reclamation.  The interests of justice "most strongly

recommend" transfer where disposition of the case would "affect not only private citizens but

also industries in the [transferee] state," and where transferring the case would not harm the

parties' interests but would instead bring the adjudication "to the venue directly affected by the

interests at stake in this case."  *See Am. Littoral Soc'y v. U.S. Envtl. Prot. Agency*, 943 F. Supp.

548, 550-51 (E.D. Pa. 1996).

In sum, localized interest in the leasing decisions strongly favors transfer to Wyoming.

**III.     CONVENIENCE CONSIDERATIONS ALSO FAVOR TRANSFER.**

     **A.     The Plaintiffs' Choice of Forum Warrants Little Deference.**

While the Plaintiffs' choice of forum must be afforded some deference, "this deference is mitigated where the plaintiff's choice of forum has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'" *Trout Unlimited*, 944 F. Supp. at 17 (internal citation omitted); *see also Citizens Advocates for Responsible Expansion, Inc. v. Dole*, 561 F. Supp. 1238, 1239 (D.D.C. 1983) (explaining that the defendant's burden is "substantially diminished where, as here, transfer is sought to the forum where plaintiffs reside, and the connection between plaintiffs, the controversy and the chosen forum is attenuated") (internal citations omitted).

Here, the operative events associated with Plaintiffs' claims occurred outside the District of Columbia.  In addition, Wildearth Guardians alleges that its members live, work, and recreate not in the District of Columbia but in Wyoming's Powder River Basin.  Compl. ¶ 17.  The Wyoming Chapter of the Sierra Club has 900 members in the state of Wyoming, *id*. ¶ 18, and the Sierra Club has staff in both Laramie and Sheridan, Wyoming.  *See* Wyoming Chapter of the Sierra Club, Sierra Club Staff, http://wyoming.sierraclub.org/contact.html (last accessed May 31, 2012). Plaintiffs, in contrast, have limited connections to this forum.  Wildearth Guardians has no offices in this District.  While the Sierra Club has offices in Washington, D.C., its members and staff who were active in the public comment phase of the FEIS process were located in Wyoming and Colorado.  *See* Ex. J, Ex. K (comment letters of the Powder River Basin Resource Council, WildEarth Guardians, Sierra Club, Center for Biological Diversity, Defenders of Wildlife).  Neither plaintiff organization alleges that its members primarily reside in this District. These facts weigh strongly in favor of transfer.  *See Bergmann* v. *U.S. Dep't of Transp.*, 710 F.

Supp. 2d 65, 72 (D.D.C. 2010) ("Substantially less deference" to plaintiff's choice of forum is warranted "when a plaintiff choose[s] a forum other than his home forum.").

Given that the District of Columbia is home to our nation's government, this Court has been understandably suspicious of attempts to base venue on limited administrative oversight occurring in Washington, D.C.  When "the only real connection [a] lawsuit has to the District of Columbia is that a federal agency headquartered here . . . is charged with generally regulating and overseeing the administrative process," this Court has afforded plaintiffs' choice of forum little deference.  *See Bergmann*, 710 F. Supp. 2d at 73 (quoting *DeLoach v. Philip Morris Co., Inc.*, 132 F. Supp. 2d 22, 25 (D.D.C. 2000).  The Complaint identifies no actions which occurred in the District of Columbia.  For this reason, Plaintiffs' choice of forum carries little weight.

## B.  Federal Defendant's Choice of Forum is Reasonable

BLM's choice of forum in Wyoming is reasonable because the vast majority of operative events occurred there.  As in *Bergmann*, 710 F. Supp. 2d at 73, where this Court transferred to Michigan a case challenging construction projects there, Federal Defendant's choice of forum is reasonable.  The lands at issue are located in Wyoming.  In addition, the administrative decision making and public participation processes occurred in Wyoming.  Finally, the effects of the project are expected to be felt most prominently in Wyoming.  Here, just as the Colorado district court concluded, the "magnitude of [the] local interests weigh heavily in favor of transfer."  Ex. I at 8.  Federal Defendant's choice of forum should prevail.

## CONCLUSION

For all these reasons, the Court should conclude that the interest of justice and the convenience of the parties favor transfer to the United States District Court for the District of

Wyoming.  Accordingly, the Court should grant Federal Defendants' motion and transfer the

case to Wyoming.

Respectfully submitted this 18th day of June, 2012,

> IGNACIA S. MORENO
> Assistant Attorney General
> United States Department of Justice
> Environment and Natural Resources Division
>
>
>  /s/ *John Most*
> JOHN S. MOST, Trial Attorney
> Natural Resources Section
> P.O. Box 7611
> Washington, D.C. 20044-7611
> John.Most@usdoj.gov
> (202) 616-3353
>
> *Counsel for Federal Defendant*

Of Counsel

Philip C. Lowe
Office of the Regional Solicitor
Rocky Mountain Region
Department of the Interior
755 Parfet Street, Suite 151
Lakewood, CO 80215
Tel: (303) 231-5353 ext. 274
Fax: (303) 231-5356
E-mail: philip.lowe@sol.doi.gov